IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ] |
| | ] |
|     **Plaintiff,** | ] |
| | ] |
| **v.** | ]      7:15-cr-354-KOB-TMP |
| | ] |
| **JOHN ROBERT TAYLOR,** | ] |
| | ] |
|     **Defendant.** | ] |

**MEMORANDUM OPINION AND ORDER**

Defendant John Robert Taylor has a history of schizophrenia, severe alcohol abuse, and numerous felony convictions. He lives in a van outside of Pickensville, Alabama without power or running water and is known to hear voices and speak to those voices. After an altercation in which Mr. Taylor attempted to fire a loaded gun at a police officer, the Government charged him as a felon in possession of a gun under 18 U.S.C. § 922(g)(1).

Mr. Taylor notified the court in writing on June 20, 2016 of his desire to waive his request for a jury trial. (Doc. 24). The court conducted the trial of this case on July 11 and 12, 2016. The court found the Government proved beyond a reasonable doubt that Mr. Taylor is a felon, that he possessed the gun, and that the gun had traveled in interstate commerce. The only issues remaining before the court are whether Mr. Taylor is entitled to an insanity defense and whether he *knowingly* possessed a gun on the date in question.

For the reasons discussed below, the court finds Mr. Taylor is not entitled to an insanity defense and that he knowingly possessed a gun, and thus is guilty as charged.

I. **Factual and Procedural Background**

The Grand Jury returned a one-count Indictment on October 29, 2015, charging Mr. Taylor with the offense of felon in possession in violation of 18 U.S.C. § 922(g)(1). Upon his filing of a notice of intent to plead not guilty by reason of mental disease or defect (doc. 13), the Government moved for an order directing that Mr. Taylor undergo a mental examination, pursuant to 18 U.S.C. § 4242(a). (Doc. 14). On February 4, 2016, the court granted the motion, and Mr. Taylor was sent to FCI Fort Worth for evaluation.

On April 27, 2016, psychologist Lisa Bellah, Ph.D., issued a written report stating, in substance, that "[t]here [was] insufficient evidence to suggest that Mr. Taylor suffered from a severe mental disease or defect at the time of his arrest that interfered with his ability to appreciate the nature, quality or wrongfulness of his alleged offense conduct." (Doc. 19 at 13). Dr. Bellah further noted that, while Mr. Taylor has been diagnosed as having schizophrenia, he has not received mental health treatment on either an inpatient or outpatient basis since 1999; he has not consistently taken psychotropic medication for approximately 20 years; and the course of his illness has been atypical for schizophrenia and more consistent with long-term alcohol abuse. *Id*. at 3, 5, 7–8. Instead, Dr. Bellah opined that "Mr. Taylor's primary diagnosis is severe and long-term abuse of alcohol . . . . Prognosis is considered poor. Mr. Taylor has a long term addiction to alcohol." *Id.* at 8. Dr. Bellah testified that alcoholism is an Axis I mental disease or disorder.

Dr. Bellah's report and her trial testimony play a critical role in the issues currently before the court: to what extent, if any, Mr. Taylor's chronic alcohol addiction affects his guilt and his ability to act "knowingly."

Trial began on July 11, 2016 and lasted barely one-and-a-half days. At the end of all the evidence, and after hearing arguments of counsel, the court found that the Government proved beyond a reasonable doubt that Mr. Taylor had prior felony convictions, that he possessed a gun on April 3, 2015, and that the gun had traveled in interstate commerce. The court reserved ruling on the remaining element of whether Mr. Taylor "knowingly" possessed the gun.

In doing so, the court found the testimony of the arresting officer, Deputy Tony Thrasher, credible. He testified that he stopped by the B-Mart convenience store in Aliceville, Alabama to buy a drink. As he approached the door, he saw Mr. Taylor arguing with the store clerk. Deputy Thrasher smelled alcohol on Mr. Taylor's breath and attempted to arrest him for public intoxication. Mr. Taylor refused to comply and began walking away. Deputy Thrasher ordered Mr. Taylor to stop, drew his Taser, and advised Mr. Taylor he would Tase him if he did not stop. Mr. Taylor spun around, pointed a loaded gun at Deputy Thrasher, and repeatedly tried pulling the trigger. Fortunately for all, the gun's safety was on.

Next, Deputy Thrasher immediately discharged the Taser, striking Mr. Taylor in the chest and stunning him. Mr. Taylor dropped his arm, but still held the gun. Although Deputy Thrasher continued to Tase him, Mr. Taylor stumbled toward a parked car, tossed the gun into the open window of the car, and eventually fell over. Deputy Thrasher immediately took Mr. Taylor into custody, secured him in the police car, and then retrieved the gun from the car. Willie Brown, a correctional officer at the Pickens County Jail, testified that Mr. Taylor complied with instructions when he was brought in to the jail.

The Government also offered proof that, at that time, Mr. Taylor was a convicted felon, and

the .38 caliber Derringer pistol was manufactured in Chino, California, so it had traveled in interstate commerce.

As mentioned previously, the report and testimony of Dr. Bellah play a critical role in determining whether Mr. Taylor "knowingly" possessed the gun. Both Dr. Bellah's report and the voluminous medical records of Mr. Taylor's treatment at VA facilities reflect that he was diagnosed and treated for paranoid schizophrenia in the late 1970s, that he has been in and out of the hospital for treatment, and that he has a long history of alcohol abuse. *See* (Doc. 19 at 3–5, 7–8). Further, Mr. Taylor has not taken medications for paranoid schizophrenia for approximately twenty years. *Id.* at 5, 12. Thus, in her opinion, Mr. Taylor's paranoid schizophrenia is in remission and his primary current diagnosis is severe and long-term alcohol abuse. *See id.* at 8. She testified that schizophrenia or alcohol-related causes are not mutually exclusive, and that alcohol can exacerbate symptoms of mental illness.

The Defense presented testimony from Mr. Taylor's long-time friend, Jacqueline Taggart. Ms. Taggart testified about Mr. Taylor's eccentric lifestyle and unusual behavior, stating that he had an aversion to being around more than two or three people, wore copious amount of clothing in summer when walking ten miles, and placed large rocks around his residence.

Ms. Taggart also testified that she took Mr. Taylor to get groceries on April 1, 2015. Ms. Taggart testified she observed Mr. Taylor talking as if a another person was in the back of the car during the trip, but that she only saw Mr. Taylor. Ms. Taggart also stated Mr. Taylor talked to himself throughout the day.

**II. Discussion**

A. Mr. Taylor failed to prove he is not guilty because of mental disease or defect.

Mr. Taylor attempts to avoid criminal responsibility by arguing that involuntary intoxication rendered him legally insane at the time of the incident. *See* (Doc. 39). To meet his burden of proof, Mr. Taylor must prove that (1) he suffers from a severe mental disease or defect, and (2) as a result of the severe mental disease or defect, he could not appreciate the nature and quality of his conduct, or the wrongfulness of his actions. 18 U.S.C. § 17. Mr. Taylor asserts that "[i]ntoxication because of physiological and psychological conditions is at issue . . . because [he] suffers from paranoid schizophrenia and severe alcohol use disorder and these conditions caused *involuntary* intoxication of alcohol resulting in an inability to appreciate the wrongfulness of his actions . . . ." *Id.* at 3.

The Government argues that Dr. Bellah's testimony that Mr. Taylor's schizophrenia was in remission and he had not received mental health treatment or medication in twenty years establishes that Mr. Taylor cannot prove he was suffering from a severe mental disease or defect during the relevant time; i.e., he cannot satisfy the first of the three prongs required to prove an insanity defense. (Doc. 40 at 5).

The Government relies on *Poolaw v. United States*, 588 F.2d 103 (5th Cir. 1979),[1] to argue that the Eleventh Circuit "does not recognize alcoholism as a severe mental disease or defect that supports a finding of not guilty by reason of insanity." (Doc. 40 at 6). *Poolaw*, however, predates

---

[1] The Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

5

the vast scientific and medical revelations of the last thirty years about the brain, which recognize drug and alcohol addiction as a disease. *See, e.g.*, Joanna S. Fowler, et al., *Imaging the Addicted Human Brain*, SCIENCE & PRACTICE PERSPECTIVES, April 2007, at 4–16, *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2851068.

The Government's reference to "a social disorder like alcoholism" (doc. 40 at 7) ignores this evolution in the understanding of alcoholism and also ignores Dr. Bellah's testimony that alcoholism is an Axis I mental disease or disorder.[2] Dr. Bellah's testimony provides evidence that alcoholism is a mental disease or defect. In *Poolaw*, however, the court did not have the benefit of more recent science. Thus, the court is not persuaded by the Government's reliance on *Poolaw* in this matter.

Indeed, the Office of the Surgeon General has recently stated, "Research on alcohol and drug use, and addiction, has led to an increase of knowledge and to one clear conclusion: Addiction to alcohol or drugs is a chronic but treatable brain disease that requires medical intervention, not moral judgment." U.S. Dep't of Health and Human Servs., Off. of the Surgeon Gen., *Facing Addiction in America: The Surgeon General's Report on Alcohol, Drugs, and Health, Executive Summary* at ES-3 (Nov. 2016) [hereinafter "Facing Addiction"], *available at* http://addiction.surgeongeneral.gov.

---

[2] The Government's reference also ignores revisions to the Diagnostic and Statistical Manual of Mental Disorders, which eliminated the term "alcoholism" in favor of the term "alcohol use disorder" and moved its listing from a subset of personality disorders to a subset of substance use disorders. *See* DSM, *infra* at 6–7.

The understanding of alcohol use disorders has evolved as science has gained a greater appreciation of how the brain operates. The Defense—and the court—question whether case law has kept pace with that evolution.

Mr. Taylor points to the progression of the Diagnostic and Statistical Manual of Mental Disorders (DSM)[3] to explain the evolution in understanding alcohol use disorders:

> The First and Second Editions of the DSM, published in 1952 and 1968 respectively, categorized "alcoholism" as a subset of personality disorders and neuroses. *See* http://pubs.niaaa.nih.gov/publications/aa30.htm (last visited July 25, 2016). In 1980, the Third Edition of the DSM (DSM-III) eliminated the term "alcoholism" in favor of two distinct categories of "alcohol abuse" and "alcohol dependence." *Id*. The DSM-III also moved these two categories under "substance use disorders" rather than personality disorders. *Id*. . . .
>
> The DSM was revised again in 1994 (DSM-IV) and kept the two subcategories. But in 2013, the drafters of DSM-V found the terms "Alcohol Abuse" and "Alcohol Dependence" misleading. DSM-V replaced the terms "Alcohol Abuse" and "Alcohol Dependence" with the umbrella term "Alcohol Use Disorder" to better describe "a distinct syndrome that includes compulsive drug-seeking behavior, loss of control, craving[,] and marked decrements in social and occupational functioning." Lloyd I. Sederer, The DSM-5: The Changes Ahead (Part 2), The Huffington Post (Nov. 19, 2011) *available at* http://www.huffingtonpost.com/lloyd-i-sederer-md-dsm-5_b_961966.html; *see also See* [sic] American Psychiatric Ass'n, Substance-Related and Addictive Disorders, DSM-5 Collection (2013) *available at* http://www.dsm5.org/Documents/Substances%20Use%20Disorder%20Fact%20Sheet.pdf. The DSM-V uses sub-classifications of mild, moderate, and severe to categorize the disorder . . . .
>
> The addicting nature of alcohol is also well known. The American Psychiatric Association (APA), which publishes the DSM, defines "addiction" as:
>
>> a complex condition, a chronic brain disease that is manifested by compulsive substance use despite harmful consequence. People with addiction (severe substance use disorder) have an intense focus on using a certain substance, such as alcohol or

---

[3] The DSM is considered to be "the psychiatric profession's diagnostic Bible." *United States v. Harris*, 1994 WL 683429, at *4 (S.D.N.Y. Dec. 6, 1994).

>drugs, to the point that it takes over their life. They keep using alcohol or a drug when they know it will causes [sic] problems. Yet a number of effective treatments are available and people can recover from addiction and lead normal, productive lives.
>
>People with a substance use disorder have disturbed thinking, behavior and body functions. Changes in the brain's wiring are what cause people to have intense cravings for the drug and make it hard to stop using the drug. Brain imaging studies show changes in the areas of the brain that relate to judgment, decision making, learning, memory and behavior control.

*See* https://www.psychiatry.org/patients-families/addiction/what-is-addiction (last visited July 21, 2016). The APA's website on Addiction explains "[p]eople with addictive disorders may be aware of their problem, but be unable to stop it even if they want to." *Id*.

(Doc. 39 at 4–6).

The U.S. Surgeon General recognizes drug and alcohol addiction as a pressing public health crisis,[4] and a report released by the Office of the Surgeon General on November 17, 2016 estimates that 20.8 million Americans over the age of 12 have a substance use disorder. "Facing Addiction," *supra*. This number approximates the number of people who have diabetes in the United States and is one-and-a-half times the number of people who have any type of cancer. "Surgeon General Murthy Wants America to Face Up to Addiction" (Nov. 17, 2016), *available at* http://www.npr.org/sections/health-shots/2016/11/17/502402409. The Surgeon General's Report summarizes the evolving understanding of substance use disorders as follows: "severe substance use disorders, commonly called addictions, were once viewed largely as a moral failing or character flaw, but are now understood to be chronic illnesses characterized by clinically significant

---

[4] Almost fifty years ago, the Supreme Court also recognized that "the destructive use of alcoholic beverages is one of our principal social and public health problems." *Powell v. Texas*, 392 U.S. 514, 526–27 (1968).

impairments in health, social function, and voluntary control over substance use." "Facing Addiction," *supra* at 2-1.

The Government also argues that Mr. Taylor is not entitled to the benefit of the insanity defense because he has not proved by clear and convincing evidence that he could not appreciate the nature and quality of his conduct or the wrongfulness of his actions at the time of the incident. *See* (Doc. 40 at 11–12; Doc. 43 at 5–6). Indeed, neither side offered direct or even circumstantial evidence regarding Mr. Taylor's level of intoxication on April 3, 2015, and the court would have to speculate to conclude he was intoxicated to such an extent as to be legally insane. Moreover, the evidence shows that while Deputy Thrasher was Tasing him, Mr. Taylor attempted to dispose of his gun by tossing it into a parked vehicle, suggesting Mr. Taylor understood the nature and quality or wrongfulness of his conduct at the time of the incident.

In addition, Mr. Taylor offered nothing to dispute the evidence that he had received neither mental health treatment since 1999 nor taken medication for schizophrenia for approximately twenty years. Finally, while Jacqueline Taggart, Mr. Taylor's friend, testified that she observed him behaving strangely on April 1, 2015, her testimony does nothing to prove Mr. Taylor's state of mind at the time of the incident two days later. Accordingly, the court finds Mr. Taylor has failed to meet his burden of proving, by clear and convincing evidence, that he could not appreciate the nature and quality of his conduct or the wrongfulness of his actions on the date in question.

Even if severe alcohol use disorder may be a severe mental disease or defect that could support an insanity defense, the court concludes Mr. Taylor has not shown he is entitled to the benefit of such a defense here. By denying the insanity defense to Mr. Taylor in this case, the court does not foreclose its use in other cases when a defendant with severe alcohol use disorder may

prove he is unable to appreciate the nature and quality of his conduct or the wrongfulness of his actions because of involuntary intoxication.

  B. <u>Mr. Taylor "knowingly" possessed a gun on April 3, 2015.</u>

 The court also considers whether Mr. Taylor's severe alcohol use disorder prevented him from "knowingly" possessing a gun on April 3, 2015.

 The Government correctly notes that a felon-in-possession charge does not require specific intent to violate the law and is a strict liability offense; therefore, it argues that a *voluntary* intoxication defense would not be available to Mr. Taylor. *See* (Doc. 40 at 7–8). As the Eleventh Circuit has stated:

> We have held that a violation of 18 U.S.C. § 922(g) is a strict liability offense. *United States v. Deleveaux,* 205 F.3d 1292, 1298 (11th Cir. 2000) ("The prosecution need show only that the defendant consciously possessed what he knew to be a firearm."). The crime of being a felon in possession of a firearm does not require any specific intent. *Id.* "Voluntary intoxication cannot negate a general intent crime" or a crime where no specific intent is required. *United States v. Costello,* 760 F.2d 1123, 1128 (11th Cir. 1985).

*United States v. Carlisle*, 173 F. App'x 796, 800 (11th Cir. 2006).

 However, the question here is whether a diagnosis of severe alcohol use disorder, such as Dr. Bellah gave Mr. Taylor, could result in *involuntary* intoxication to such extent that a defendant could not "knowingly" possess a gun. Because of the scientific consensus, aided largely by the development and ever-increasing abilities of brain imaging, that treats alcoholism as a disease and recognizes that the disease includes "compulsive substance abuse," perhaps courts need to rethink whether involuntary (i.e., compulsive) intoxication may be an available defense in some cases for defendants, like Mr. Taylor, with severe alcohol use disorder. However, even if such a defense were recognized, the court finds the evidence in this case does not rise to that level.

As mentioned previously, the evidence presented at trial shows that, while Deputy Thrasher was Tasing him, Mr. Taylor attempted to dispose of his gun by tossing it into a parked vehicle, suggesting Mr. Taylor *knew* he possessed the gun. In addition, the correctional officer's testimony that Mr. Taylor complied with instructions when he was brought in to the jail indicates Mr. Taylor was capable of acting knowingly. Finally, neither side presented evidence regarding Mr. Taylor's level of intoxication on the date of the incident.

Thus, even if involuntary intoxication resulting from a severe alcohol use disorder were a valid defense to a felon-in-possession charge, the evidence before the court does not show that Mr. Taylor was so intoxicated that he did not "knowingly" possess the gun.

### III.     Conclusion

Based on the foregoing, the court finds Mr. Taylor guilty as charged in the indictment with the offense of felon in possession in violation of 18 U.S.C. § 922(g)(1). The court will set sentencing by separate order.

**DONE** and **ORDERED** this the 20th day of December, 2016.

*[signature: Karon O. Bowdre]*
_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE